UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIAMOND CHEMICAL COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> AKZO NOBEL CHEMICALS B.V., *et al.*, <br><br> Defendants. | Civil Action No. 01-2118 (CKK) |
| DIAMOND CHEMICAL COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ATOFINA CHEMICALS, INC., *et al.*, <br><br> Defendants. | Civil Action No. 02-1018 (CKK) |

**MEMORANDUM OPINION**
(May 14, 2007)

Currently pending before the Court are cross motions brought in each of the above-captioned matters by Class Plaintiff, Diamond Chemical Company, Inc. ("Class Plaintiff"), and Defendants[1] regarding the disposition of undistributed funds derived from the settlement of these actions. Class Plaintiff seeks an order authorizing the distribution of settlement proceeds to a final group of class claimants (the "Supplemental Claimants") and the payment of certain unpaid

---

[1] The term "Defendants" collectively refers to Akzo Nobel Chemical B.V., Akzo Nobel Functional Chemicals LLC, Atofina Chemicals, Inc. n/k/a Arkema Inc., and Elf Atochem S.A., and Atofina S.A. n/k/a Arkema, Clariant AG, Clariant International AG, Clariant Corporation, Hoechst AG, Hoechst Celanese Corp., CNA Holdings, Inc., and Aventis SA n/k/a Sanofi-Aventis. Defs' Cross-Mot. at 1 n.1.

fees and expenses to the Claims Administrator, Heffleer, Radetich & Saitta L.L.P. (the "Claims Administrator") and further authorizing a *cy pres* distribution of the settlement funds remaining thereafter (the "Remaining Settlement Fund") to a newly created endowment fund at The George Washington University Law School (the "Endowment Fund").  Defendants oppose Class Plaintiff's motion insofar as it seeks *cy pres* distribution of the entire Remaining Settlement Fund, and have cross-moved for an order authorizing a refund to Defendants of half of the Remaining Settlement Fund, as well as a *cy pres* distribution of the other half of the Remaining Settlement Fund.

Upon searching consideration of Class Plaintiff's Motion to Distribute, Defendants' Opposition and Cross-Motion for Partial Refund, Class Plaintiff's Opposition to Defendants' Cross-Motion, Defendants' Reply in support of their Cross-Motion, the relevant case law, and the entire record herein, the Court concludes that the equities at issue favor a *cy pres* distribution of the entire Remaining Settlement Fund, and shall therefore deny Defendants' Cross-Motion for Partial Refund.  The Court shall grant-in-part Class Plaintiff's Motion to Distribute, to the extent that it seeks authorization to distribute settlement funds to the Supplemental Claimants and to pay the Claims Administrator's additional fees and expenses.  However, the Court shall hold in abeyance that portion of Class Plaintiff's Motion to Distribute that seeks an order authorizing a *cy pres* distribution to the Endowment Fund, and shall order Class Plaintiff to submit additional briefing as to the appropriateness of its proposed *cy pres* recipient.

## I.  BACKGROUND

The complaints in these actions were brought on behalf of a class of direct purchasers of sodium monochloroacetate and monochloroacetic acid ("MCAA"), alleging that Defendants

conspired to fix, raise, maintain, or stabilize the prices and allocate markets for the sale of

MCAA in the United States and elsewhere, in violation of Section 1 of the Sherman Antitrust

Act, 15 U.S.C. § 1.  *See* Cl. Pl.'s Mem. of Law in Support of Mot. to Distribute (hereinafter "Cl.

Pl.'s Mem.") at 6-7.  The Court previously approved three settlement agreements in these

actions, reached by Class Plaintiff with each of three separate defendant groups.[2]  Together, these

settlements yielded approximately $12.9 million for distribution to eligible class members

(exclusive of deductions for attorneys fees and other expense), which were was combined into a

single fund because of Defendants' joint and several liability (the "Settlement Fund").  *See* Cl.

Pl.'s Mem. at 2, n.1; Defs' Joint Mem. of P&A in Opp'n to Cl. Pl.'s Mot. (hereinafter "Defs'

Opp'n Mem.") at 2-3.

        After entering into the settlement agreements, Defendants provided Class Plaintiff with

the identities and last-known addresses for all purchasers eligible to recover from the Settlement

Fund.  Subsequently, the Claims Administrator, who was retained by Class Counsel, mailed

claim forms to class members on February 9, 2004, and again on July 9, 2004.  Cl. Pl.'s Mem. at

2.  On February 21, 2005, the Court approved Class Plaintiff's unopposed motion for partial

distribution of the Settlement Fund, which requested that certain approved claimants receive

trebled damages based on an estimated overcharge of 15 percent.  *Id.*  The Claims Administrator

---

[2] The Court approved the settlement reached with Akzo Nobel Chemicals B.V. and Akzo
Nobel Functional Chemicals, L.L.C. on May 22, 2002, *see* Order, *Diamond Chemical Co. v.
Akzo Nobel Chemicals B.V., et al.*, Civil Action No. 01-2118 (hereinafter "*Akzo*") (D.D.C. May
22, 2002), Dkt # 32, and the settlement reached with Clariant AG, Hoechst AG and certain of
their affiliates on November 21, 2003, *see* Order, *Akzo*, (D.D.C. Nov. 21, 2003), Dkt # 51.  The
Court approved the settlement reached with Atofina Chemicals, Inc. and Atofina SA on June 3,
2004.  *See* Order, *Diamond Chemical Co. v. Atofina Chemicals, Inc., et al.*, (hereinafter
"*Atofina*") (D.D.C. Jun. 22, 2004), Dkt # 92.

then distributed approximately $3,034.484.88 of the $12.9 million Settlement Fund.  Cl. Pl.'s

Mem. at 2 (citing Order, *Akzo* (D.D.C. Feb. 22, 2005), Dkt # 58; Order, *Atofina*, (D.D.C. Feb. 22,

2005), Dkt # 97).  On April 12, 2006, the Court approved Class Plaintiff's unopposed motion to

distribute proceeds from the Settlement Fund to a group of final claimants, who had not

previously been mailed the class notice, and awarded portions of the Settlement Fund to pay the

fees and expenses of the Claims Administrator and Class Counsel.  Cl. Pl.'s Mem. at 3 (citing

Order, *Akzo* (D.D.C. Apr. 12, 2006), Dkt # 62; Order, *Atofina* (D.D.C. Apr. 12, 2006), Dkt #

101).

According to Class Plaintiff, there is currently $6,720,407.93 remaining in the Settlement

Fund.  Cl. Pl.'s Mem. at 3; Defs' Opp'n Mem. at 2.  On February 12, 2007, Class Plaintiff moved

to distribute $1,650,000 of these proceeds to a total of four Supplemental Claimants, discussed in

greater detail below.  Cl. Pl.'s Mem. at 3-5.  In addition, Class Plaintiff's motion requests

approval to distribute $4,448.87 from the Settlement Fund to the Claims Administrator for fees

and expenses incurred in connection with the final administration and audit of claims.  *Id.* at 5.

According to Class Plaintiff, after these distributions, the Remaining Settlement Fund will total

approximately $5,113,285.10.  *Id.* at 6.  As the settlement agreements are silent as to the

disposition of any excess funds, Class Plaintiff recommends that the Court make a *cy pres*

distribution of the Remaining Settlement Funds to a newly created endowment fund at The

George Washington University Law School.  *Id.* at 6-8.  Class Plaintiff asserts that the

Endowment Fund will "provide financial support for the academic and clinical programs at The

George Washington University Law School that are designed to ensure the effective private

enforcement of antitrust and competition laws within the United States and around the world."

4

*Id.* at 7.

On February 26, 2007, Defendants filed a partial Opposition to Class Plaintiff's motion to distribute, as well as a Cross-Motion for Partial Refund.  Defendants do not object to Class Plaintiff's proposed distributions to the Supplemental Claimants or the Claims Administrator. Defs' Opp'n Mem. at 2.  Defendants do, however, oppose Class Plaintiff's motion insofar as it recommends a *cy pres* distribution of the entire Remaining Settlement Fund.  *Id.*  Asserting that they have a compelling equitable claim to the Remaining Settlement Fund and that the policies of the Sherman Act have been served by the distributions to the class claimants, Defendants cross-move the Court for a refund of one-half of the Remaining Settlement Fund, and a distribution of the other half of the Remaining Settlement Fund to a *cy pres* recipient.  *See generally* Defs' Opp'n Mem.  In their Opposition Memorandum, Defendants "take no position on Class Plaintiff's proposed cy pres recipient," *id.* at 2; however, in their subsequent Reply in support of their Cross-Motion, Defendants question how any non-claiming class members would benefit from Class Plaintiff's proposed *cy pres* gift to the Endowment Fund.  Defs' Reply at 7-9.  Class Plaintiff filed an Opposition to Defendants' Cross-Motion on March 21, 2007, and Defendants filed a Reply in further support of their Cross-Motion on March 30, 2007.

## II.  DISCUSSION

*A.     The Court Grants Class Plaintiff's Motion to Distribute Settlement Proceeds to the Supplemental Claimants and the Claims Administrator*

In July and August of 2006, four Supplemental Claimants – each of whom had previously been sent a Class Notice – filed claims with the Claims Administrator.  Cl. Pl.'s Mem. at 3 (citing 2/1/07 Aff. of Michael E. Hamer, Sections B and C).  The Claims Administrator reviewed

each Claim Form for completeness, calculated the claimed, rejected, and allowed purchases for each Claimant, and sent each Claimant a letter requesting that they explain in detail the reasons for the tardy filing of their claims. *Id.* at 3-4 (citing Hamer Aff. Sec. C). After reviewing the Supplemental Claimants' proffered explanations, the Claims Administrator and Class Counsel determined that the tardiness of three of the Supplemental Claimants was not excusable. *Id.* at 4 (citing Hamer Aff. Sec. C). As a result, the Claims Administrator sent "compromise" letters to these three Supplemental Claimants, each of whom accepted the reduced recovery amount that they were offered. *Id.* (citing Hamer Aff. Sec. C). In addition, the Claims Administrator and Class Counsel deemed the fourth Supplemental Claimant's tardiness excusable and therefore recommend that the fourth Claimant recover the full amount of its allowable claims. *Id.* at 4-5 (citing Hamer Aff. Sec. C). The compromise recoveries for three of the Supplemental Claimants and the Allowed Purchases for the fourth Supplemental Claimant total $1,650,000, and Class Plaintiff requests authorization to make these distributions from the Settlement Fund. *Id.* at 5.

In addition, Class Plaintiff requests authorization to distribute $4,448.87 from the Settlement Fund to the Claims Administrator for fees charged and expenses incurred since March 29, 2006 in connection with the final administration and audit of claims. Cl. Pl.'s Mem. at 5.[3] As noted above, Defendants do not oppose either the distribution to the Supplemental Claimants or to the Claims Administrator, and the procedures undertaken by the Claims Administrator in connection with the Supplemental Claimants appear to have been proper and complete. The Court shall therefore grant Class Plaintiff's Motion to Distribute insofar as it relates to

---

[3] Class Plaintiff attaches the Claims Administrator's itemized invoice of fees and expenses totaling $4,448.87 to its Motion to Disburse. *See* Hamer Aff., Ex. E.

distributions to the Supplemental Claimants and the Claims Administrator.

      **B.**    *Class Plaintiff's Proposed Cy Pres Distribution and Defendants' Cross-Motion for Partial Refund*

Class Plaintiff asserts that "it is well settled that a court may utilize cy pres principles to distribute unclaimed funds from a class action," and specifically recommends that the Court approve a *cy pres* distribution of the Remaining Settlement Fund to a newly created endowment fund at The George Washington University Law School.  Cl. Pl.'s Mem. at 6.  Class Plaintiff states that the Endowment Fund would support "an endowed academic chair or chairs whose holder(s) will work to facilitate and coordinate the enforcement of domestic and foreign antitrust competition laws, on behalf of individuals and consumers worldwide," and provide financial support for an academic center to be directed by the chair holders, which would conduct research on international and transnational antitrust litigation and host conferences on this topic.  *Id.* at 6-7.  Class Plaintiff further asserts that the Endowment Fund might be used to support the Law School's Jacob Burns Clinics and to "start or support new initiatives or projects for the purpose of providing services directly to individuals and consumer classes."  *Id.* at 7-8.

Defendants oppose Class Plaintiff's proposal to distribute the entire Remaining Settlement Fund to the Endowment Fund, and assert that a more equitable distribution would be to refund one-half of the Remaining Settlement Fund to Defendants, and make a *cy pres* distribution of the other half of the Remaining Settlement Fund.  In their Opposition Memorandum, Defendants "take no position on Class Plaintiff's proposed cy pres recipient," Defs' Opp'n Mem. at 2; however, in their subsequent Reply, Defendants question how non-claiming class members would benefit from a *cy pres* gift to the Endowment Fund.  Defs' Reply

at 7-9.

"It is not uncommon in consumer class actions to have funds remaining after payment of all identifiable claims." *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1393 (N.D.Ga. 2001); *see also Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).  In approaching the question of the appropriate distribution of such funds, various courts have determined that "neither the class members nor the settling defendants have any legal right to unclaimed or excess funds."  *Powell v. Georgia-Pacific Corp.*, 843 F. Supp. 491, 495 (W.D.Ark. 1994), *aff'd*, 119 F.3d 703 (8th Cir. 1997); *see also Motorsports Merch.*, 160 F. Supp. 2d at 1393; *Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807, 811-12 (5th Cir. 1989); *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1254 (7th Cir. 1984), *cert. dismissed*, 471 U.S. 1113, 106 S. Ct. 11, 86 L. Ed. 2d 269 (1985).  Here, neither Class Plaintiff nor Defendants assert that they retain any legal claim to the Settlement Fund, nor could they in light of the binding settlement agreements in these matters.  The Court therefore must apply equitable principles in considering the appropriate distribution of the Remaining Settlement Fund.  *See Motorsports Merch.*, 160 F. Supp. 2d at 1393; *see also Powell*, 843 F. Supp. at 495 (until settlement funds are completely distributed, the court retains its traditional equity powers) (citing *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978)).

When faced with unclaimed settlement funds, court have generally considered four options: (1) *pro rata* distribution to claiming class members; (2) general or specific escheat to a governmental body; (3) reversion to the defendant; and (4) *cy pres* distribution.  *See Powell*, 843 F. Supp. at 495; *Motorsports Merch.*, 160 F. Supp. 2d at 1393-94; 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 10.13 to 10.25 (4th ed. 2002).  In deciding among these

8

distribution options, courts have been guided by "the objectives of the underlying statute and the interests of the silent class members."  *Six Mexican Workers*, 904 F.2d at 1307; *see also Powell*, 843 F. Supp. at 495-96.

Neither Class Plaintiff nor Defendants suggest that the Court dispose of the Remaining Settlement Fund via *pro rata* distribution to claiming class members, and the Court notes that such a distribution would not be equitable in these matters because, as Class Plaintiff concedes, "all claimants, who filed a timely notice of their claims received the full amount of settlement funds for each of their allowed claims, equal to 45 percent of the total price they paid for their direct purchases" of MCAA in the United States during the class period.  Cl. Pl.'s Mem. at 2. Furthermore, while escheat to a governmental body might be appropriate because the instant settlement stemmed from Defendants' alleged violation of Section 1 of the Sherman Act, *see Folding Carton*, 744 F.2d at 1255; *Six Mexican Workers*, 904 F.2d at 1308, this option is not urged by any party.  The Court shall therefore consider those options that are advanced by Class Plaintiff and Defendants – reversion and *cy pres* distribution.

Defendants argue that they have a compelling equitable claim to the Remaining Settlement Fund, asserting that they paid their respective settlement funds for the sole purpose of compensating the class and with the expectation that class compensation would exhaust the fund. Defs' Opp'n Mem. at 5.  Defendants also highlight that they cooperated fully in assisting Class Plaintiff and the Claims Administrator in distributing the Settlement Fund.  *Id.*  However, according to Defendants, the Settlement Fund was substantially over-funded because at the time that Defendants entered into their respective settlement agreements, they lacked "complete information about the identity of their co-defendants' customers and pertinent sales volumes."

Defs' Reply at 2, 6.  Defendants also argue that a refund would not undercut the compensatory

and punitive goals of the Sherman Act because all claiming class members have received

payment of 45 percent of the total price they paid for their direct purchases – treble damages

based on an overcharge estimate of 15 percent.  Defs' Opp'n Mem. at 7.  Defendants further note

that this 15 percent overcharge estimate was inflated from the 9 percent estimate endorsed by

Class Plaintiff's expert.  *Id.* at 7-8.

The Court agrees with Defendants that the claiming class members have been fully

compensated according to the terms of the settlement agreements, and accepts Defendants'

assertion – not contested by Class Plaintiff – that Defendants cooperated fully in achieving that

compensation.  However, these facts alone do not justify reversion of a portion of the Remaining

Settlement Fund to Defendants.  As an initial matter, Defendants' assertion that they paid their

respective settlement funds "for the specific and limited purpose of compensating the class,"

Defs' Opp'n Mem. at 5 (quoting *Wilson*, 880 F.2d at 813), obscures the reality that the

"settlement not only compensated those Plaintiffs who made claims to the fund, but also relieved

Defendants of liability from Plaintiffs' individual claims," *Motorsports Merch.*, 160 F. Supp. 2d

at 1395.  Thus, although Defendants now appear to suggest that they mistakenly agreed to

overpay in the settlement agreements, they entered those agreements willingly and obtained a

benefit from the agreements above and beyond the compensation of claiming class members,

namely a release from further litigation.  *See id.*; *see also Beecher*, 575 F.2d at 1016 ("The fact

that this settlement, freely entered into by experienced counsel on both sides, has in light of

subsequent events proven to be more beneficial to the plaintiff classes than to [defendant] does

not now provide a basis for the agreement to be set aside.").

Moreover, reversion to Defendants appears inappropriate in the instant situation because the settlement was based on allegations that Defendants violated Section 1 of the Sherman Antitrust Act which, in addition to compensatory elements, has punitive and deterrence goals. *See In re Folding Carton Antitrust Litig.*, 557 F. Supp. 1091, 1105 (N.D. Ill. 1983), *reversed in part*, 744 F.2d 1252 (7th Cir. 1984), (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)).  Thus, when faced with statutes that have deterrence as a goal, courts have declined to allow reversion of unclaimed settlement funds to a settling defendant.  *See id.* ("in light of the Sherman Act policy of deterrence and the defendants' wrongdoing, we reject their equitable claim to the fund"); *Six Mexican Workers*, 904 F.2d at 1308 ("When . . . a statute's objectives include deterrence or disgorgement, it would contradict these goals to permit the defendant to retain unclaimed funds."); *see also* Newberg § 11.20.

Indeed, a number of the cases that Defendants cite in support of their claim for reversion – cases which arise in contexts other than under the antitrust laws – specifically distinguish themselves from situations involving the Sherman Act.  For instance, in *Wilson v. Southwest Airlines*, a case involving a judgment that the defendant violated Title VII, the Court allowed reversion to the defendant, noting " we find a situation here very different from [one in which] the defendants had violated the Sherman Act, the overriding policy of which is punishment and deterrence.  Here, [defendant] was found in violation of Title VII, the policy of which . . . is compensatory rather than punitive." *Wilson*, 880 F.2d at 815.  *See also Friedman v. Lansdale Parking Auth.*, No. Civ. A. 92-7257, 1995 WL 141467, *3-4 (E.D.Pa. Mar. 31, 1995) (allowing

11

reversion to defendant of settlement funds in an action brought under Rule 10(b) of the Securities
Exchange Act, and distinguishing *Folding Carton* on the grounds that it was brought under the
Sherman Act).

Furthermore, Defendants assert that the compensatory and punitive purposes of the
Sherman Act have already been achieved via the settlement payments made to claiming class
members.  Defs' Opp'n Mem. at 6.  However, Defendants overlook the fact that the best
equitable claim to the Remaining Settlement Fund belongs to the non-claiming class members,
who "furnished equal consideration for the settlement in this litigation in that their purchases
formed part of the base of the various settlements," and who are bound by the final judgment in
these matters.  *Folding Carton*, 557 F. Supp. at 1107.  As the Supreme Court has recognized,
"[t]he members of the class, whether or not they assert their rights, are at least the equitable
owners of their respective shares in the recovery."  *Boeing Co. v. Van Gemert*, 444 U.S. 472,
481-82, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).  In light of this equitable claim, as well as the
punitive and deterrence goals of the Sherman Act, the Court concludes that reversion of one-half
of the Remaining Settlement Fund to Defendants is not appropriate in this instance.  The Court
shall therefore consider Class Plaintiff's proposal for the Remaining Settlement Fund – *cy pres*
distribution to the Endowment Fund.

Although it has not explicitly endorsed the practice, the D.C. Circuit has recognized that
"[i]n class actions, some courts have applied the equitable doctrine of cy pres to undistributed
damage or settlement funds."  *Dem. Cent. Comm. of the Dist. of Columbia v. Washington Metro.*

*Area Transit Comm'n*, 84 F.3d 451, 455 (D.C. Cir. 1996).[4]  The *cy pres* doctrine allows

unclaimed settlement funds to be distributed to the "next best" use, that is, for the indirect benefit

of the class and the non-claiming class members, when plaintiffs cannot be compensated

individually.  *Id.*; *see also* Newberg § 11.20.[5]  Class Plaintiff correctly notes that courts have

utilized the *cy pres* doctrine in distributing unclaimed settlement funds from antitrust actions.

*See e.g.*, *Motorsports Merch.*, 160 F. Supp. 2d at 1395; *Schwartz v. Dallas Cowboys Football*

*Club, Ltd.*, 362 F. Supp. 2d 574, 577 (E.D.Pa. 2005); *In re Airline Ticket Comm'n Antitrust*

*Litig.*, 207 F.3d 679, 682-84 (8th Cir. 2002).

  Thus, at least in theory, a *cy pres* distribution appears to be an appropriate disposition of

the entire Remaining Settlement Fund, in light of the equitable claim to that Fund held by the

non-claiming class members and the deterrence and punitive goals of the Sherman Act.

However, Class Plaintiff has failed to establish that its proposed *cy pres* recipient – the

Endowment Fund – is the appropriate recipient of the Remaining Settlement Fund.  In applying

*cy pres* principles, it is appropriate for a court to consider "(1) the objectives of the underlying

---

  [4] As the D.C. Circuit recognized, "the term '*cy pres*' is derived from the Norman French expression *cy pres comme possible*, which means 'as near as possible[,]'" and is a rule of construction used to preserve testamentary charitable gifts that otherwise would fail.  *Dem. Cent. Comm.*, 84 F.3d at 455 n.1.

  [5] As the D.C. Circuit has noted, the *cy pres* doctrine is often associated with the controversial use of "fluid class recovery" in federal class actions, in which otherwise allegedly unmanageable class actions have been permitted to proceed to trial.  *Dem. Cent. Comm.*, 84 F.3d at 455 n.2; *see also Six Mexican Workers*, 904 F.2d at 1307.  However, the Court does not consider the *cy pres* method in this case as a means of determining whether to certify a settlement class; rather, "we are presented here with what is in effected a *fait accompli*: the class members who filed claims have been substantially compensated yet the reserve fund remains and must be allocated to some appropriate use."  *Folding Carton*, 557 F. Supp. at 1109; *see also Six Mexican Workers*, 904 F.2d at 1307 (holding that the district court properly considered *cy pres* distribution for the limited purpose of distributing unclaimed funds).

statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case." *Schwartz*, 362 F. Supp. 2d at 576 (citing *Airline Ticket Comm'n*, 207 F. 3d at 682). Class Plaintiff cites these factors in its Motion to Disburse, but does not adequately demonstrate how its proposed distribution to the Endowment Fund accords with those considerations. Cl. Pl.'s Mem. at 6. Class Plaintiff broadly describes the activities at The George Washington University Law School that it expects would be funded by the Endowment Fund, all of which generally support the objectives of the Sherman Act, but does not draw a specific correlation between those activities and the allegations of the instant actions or the identity of the class members in these actions. Indeed, as Defendants note in their Reply, "[g]iven the fact that membership in the class was limited to U.S. customers, the 'foreign' aspect of the mission of [the Endowment Fund] seems especially divorced from benefitting any non-claiming class member." Def.'s Reply at 9.

The Court shall therefore hold in abeyance Class Plaintiff's Motion to Distribute, insofar as it seeks approval of a *cy pres* distribution to the Endowment Fund, and shall order Class Plaintiff to provide further briefing as to the appropriateness of its proposed *cy pres* recipient. In the event that Defendants deem it necessary to respond to Class Plaintiff's additional briefing, Defendants shall be given the opportunity to do so.

## III.  CONCLUSION

For the foregoing reasons, the Court concludes that the equities at issue favor a *cy pres* distribution of the entire Remaining Settlement Fund over a reversion of that Fund to Defendants, and shall therefore deny Defendants' Cross-Motion for Partial Refund. The Court shall grant-in-part Class Plaintiff's Motion to Distribute, to the extent that it seeks authorization

to distribute settlement funds to the Supplemental Claimants and to pay the Claims

Administrator's additional fees and expenses.  However, the Court shall hold in abeyance that

portion of Class Plaintiff's Motion to Distribute that seeks authorization for a *cy pres* distribution

to the Endowment Fund and, as set forth in the accompanying Order, shall order Class Plaintiff

to submit additional briefing as to the appropriateness of its proposed *cy pres* recipient.

Date:   May 14, 2007

                                    _____/s/_____
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge